**William T. KEALY, Jr., Respondent,**

v.

**ST. PAUL HOUSING & REDEVELOPMENT AUTHORITY et al., Relators.**

**No. 51150.**

Supreme Court of Minnesota.

Jan. 30, 1981.

Laurence F. Koll, St. Paul, for relators.

F. Dean Lawson, Minneapolis, for respondent.

Byron L. Zotaley, Minnesota Trial Lawyers Ass'n, Minneapolis, amicus curiae.

SCOTT, Justice.

Employer and insurer (relators) petitioned this court for a writ of certiorari to review a decision of the Workers' Compensation Court of Appeals filed February 19, 1980, upon the grounds that the decision is not in conformity with the terms of the Workers' Compensation Act and is unwarranted by the evidence. We reverse.

On December 10, 1976, the employee was injured in an automobile accident that gave rise to both a workers' compensation claim and a third-party action. In May, 1979, the employee settled the third-party claim for $49,000. Relators claimed a subrogation interest in the proceeds of the third-party settlement pursuant to Minn.Stat. § 176.-061(5) (1978).[1] A determination of relators' third-party credit was made by the Workers' Compensation Division (Division) on June 8, 1979. A closely divided compensation court of appeals (3–2) affirmed the Division's order on February 15, 1980. In so holding, the compensation court of appeals interpreted Minn.Stat. § 176.061(6) (1978) as awarding relators $14,117.58 from the third-party proceeds. Relators claim that they should have been awarded the sum of $19,908.19. At the time of the $49,-000 third-party settlement, relators had paid the sum of $30,283.49 in workers' compensation benefits to the employee.[2] Legal fees and costs in obtaining the third-party settlement amounted to $16,787.69.

The Division computed the distribution of proceeds in accordance with its interpretation of Minn.Stat. § 176.061(6) (1978). That statute sets out the following method for dividing the proceeds of a recovery from a third-party:

> The proceeds of all actions for damages or settlement thereof under this section, received by the injured employee or his dependents or by the employer as provided by subdivision 5, shall be divided as follows:
>
> (a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then
>
> (b) One-third of the remainder shall in any event be paid to the injured employee or his dependents, without being subject to any right of subrogation.

1. That statute states in part as follows:

   If the action against such other party is brought by the injured employee or his dependents and a judgment is obtained and paid or settlement is made with the other party, the employer may deduct from the compensation payable by him the amount actually received by the employee or dependents in accordance with subdivision 6 * *. If the injured employee or his dependents agree to receive compensation from the employer or institute proceedings to recover the same or accept from the employer any payment on account of such compensation, the employer is subrogated to the rights of the employee or his dependents.

2. The employee received the following workers' compensation benefits:

   | | |
   |---|---|
   | Temporary Total | $13,704.47 |
   | Permanent Partial | 7,087.50 |
   | Retraining | 5,145.27 |
   | Medical | 4,346.25 |
   | Total Paid | $30,283.49 |

(c) Out of the balance remaining, the employer shall be reimbursed in an amount equal to all compensation paid under this chapter to the employee or his dependents by the employer less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or his dependents from the other party multiplied by all compensation paid by the employer to the employee or his dependents.[3]

(d) Any balance remaining shall be paid to the employee or his dependents, and shall be a credit to employer for any compensation which employer is obligated to pay, but has not paid, and for any compensation that such employer shall be obligated to make in the future.

Pursuant to its interpretation of Minn. Stat. § 176.061(6)(c) (1978) the Division allocated the third-party proceeds as follows:

### DISTRIBUTION OF THIRD–PARTY PROCEEDS

| | | |
|---|---|---|
| 1. | Total Recovery | $49,000.00 |
| 2. | Non-Compensation Related Items | |
| 3. | Balance | $49,000.00 |
| 4. | Legal Fees and Costs   34.26% | 16,787.69 |
| 5. | Net Recovery | $32,212.31 |
| 6. | Statutory One-Third to Employee-Dependents | 10,737.44 |
| 7. | Subrogation Credit Balance | $21,474.87 |

Available for Distribution as Follows:

| | | |
|---|---|---|
| a. | Subrogation Reimbursement | $14,117.58 |
| b. | Additional Liability | $ |
| c. | Subrogation Waived | $ |
| d. | Share of Fees and Costs | $ 7,357.29 |
| e. | Future Credit | $ |

| | | |
|---|---|---|
| 8. | Payable to Employee-Dependents | $18,094.73 |

In accordance with Minn.Stat. § 176.-061(6)(a) (1978) the Division deducted the legal fees and costs ($49,000.00–$16,787.69), leaving a balance of $32,212.31. The Division then distributed one-third of the balance remaining ($10,737.44) as required by Minn.Stat. § 176.061(6)(b) (1978). These computations left a balance remaining of $21,474.87. All parties agree that the Division correctly applied subdivisions 6(a) and 6(b) of section 176.061.

Under Minn.Stat. § 176.061(6)(c) (1978) the Division distributed $14,117.58 to relators as their subrogation interest. The sum of $7,357.29 was then allocated to the employee. The Division's computations left no future credit to the relators. The computations that the Division followed may be inserted into the statutory language as follows:

(c) Out of the balance remaining [$21,-474.87], the employer shall be reimbursed in an amount equal to all compensation paid under this chapter to the employee or his dependents by the employer [$21,-474.87] less the product of the costs deducted under clause (a) [$16,787.69] divided by the total proceeds received by the employee or his dependents from the other party [$49,000.00] multiplied by all compensation paid by the employer to the employee or his dependents [$21,474.87].

---

**3.** Prior to the Legislature's 1976 amendment of Minn.Stat. § 176.061(6)(c) it read, "Out of the balance remaining, the employer shall be reimbursed for all compensation paid under Minnesota Statutes, Chapter 176. *See* Act of April 3, 1976, ch. 154, § 2, 1976 Minn.Laws 449, 449–50 (current version at Minn.Stat. § 176.061(6)(c) (1978).

Mathematically, the Division engaged in the following computations:

(1) $\dfrac{\$16,787.69 \text{ (legal costs)}}{\$49,000.00 \text{ (third-party proceeds)}}$ X $21,474.87 (subrogation credit = $7,357.29 balance available for distribution)

(2) $21,474.87 – $7,357.29 = $14,117.58

---

Because there was no balance remaining, according to its interpretation, the Division did not apply Minn.Stat. § 176.061(6)(d) (1978).

In affirming the Division, the compensation court of appeals summarized the calculations as follows:

(1) $\dfrac{\text{Legal Costs}}{\text{Total 3rd Party Recovery}}$  $\dfrac{\$16,787.69}{\$49,000.00}$ = 34.2606%

(2) $21,474.87 less (34.26% X $21,474.87) = $14,117.58

---

On their appeal to the compensation court of appeals and to this court, relators argue that the computations under subdivisions 6(c) and 6(d) of section 176.061:

should have required distribution to the employer and insurer of a subrogation interest in the amount of $19,908.19, with the balance of $1,566.68 being paid to the employee and available as a future credit to the employer and insurer in accordance with the following calculation

(c) Out of the balance remaining ($21,474.87), the employer shall be reimbursed in an amount equal to all compensation paid under this chapter to the employee or his dependents by the employer ($30,283.49) less the product of the costs deducted under clause (a) ($16,787.69) divided by the total proceeds received by the employee or his dependents from the other party ($49,000.00) multiplied by all compensation paid by the employer to the employee or his dependents. [$30,283.49]

Relators' contentions may be summarized by the following computations:

(1) $\dfrac{\$16,787.69 \text{ (legal costs)}}{\$49,000.00 \text{ (third party proceeds)}}$ X $30,283.49 (workers' compensation) = $10,375.30 benefits paid prior to settlement)

(2) $30,283.49 – $10,375.30 = $19,908.19

(3) $21,474.87 (the balance remaining) – $19,909.19 = $1,566.68, which allegedly is to be paid to the employee and constitutes a credit to relators for any compensation they are obligated to make in the future.

---

The issues confronting us are as follows:

(1) Whether the phrase "balance remaining" in Minn.Stat. § 176.061(6)(c) (1978) creates a limited fund from which relators are reimbursed when the "balance remaining" is less than the amount of workers' compensation benefits paid on the date of the third-party settlement.

(2) Whether the amount that remains for distribution to the employee after the computation under Minn.Stat. § 176.061(6)(c) (1978) should become a credit against any future benefits paid by relators under Minn. Stat. § 176.061(6)(d) (1978).

1. In affirming the Division's computation, the compensation court of appeals held that:

[T]he dollar amount of the "balance remaining" less the insurer's proportionate share of attorney's fees was a limiting factor or "cap" or a "ceiling" on the dollar amount of "all compensation paid" in applying paragraph c of Subd. 6.

Relators present several reasons why the compensation court of appeals' interpretation of Minn.Stat. § 176.061(6)(c) (1978) should be reversed. First, relators claim that the plain language of the statute does not support the compensation court of appeals' method of allocating third-party proceeds.[4] We find this argument persuasive.

Second, relators allege that if the legislature had intended that the statutory phrase "[a]ll compensation paid under this chapter" was to be limited by the terms "balance remaining," it could have drafted statutory language to coincide with that result.[5]

Finally, relators argue that the phrase "out of the balance remaining" is self-limiting. We agree with relators' reasoning that what follows after that phrase is a computation and the factors contained therein should not be changed. Relators' arguments have merit, and are controlling.[6]

The employee and amicus, Minnesota Trial Lawyers Association, urge six reasons why the compensation court of appeals' decision should be affirmed:

First, unlike the relators' construction, the employee contends that the compensation court of appeals' formula produces consistent and uniform results in all cases.

Second, the employee argues that the compensation court of appeals' formula is consistent with the intent of the Legislature because it requires relators to bear a more equitable share of the employee's litigation costs. In accepting this rationale, the compensation court of appeals stated:

> It is quite clear from the 1976 amendment that it was the intention of the legislature that the insurer should directly participate in the payment, on a permanent basis, of a proportionate share of attorneys fees that the employee had already paid. The amendment was remedial and was intended to make the insurer, who was not the injured [party] and who was getting reimbursement, share more equitably in the employee's cost of recovery. The amendment was certainly not intended to create a larger net subrogation to the insurer—and especially at the expense of the employer * * *. Under the insurer's formula, the insurer would get a subrogation credit that exceeds the net recovery of the employee! It would also allow the insurer to recover now as it would have recovered under the old law. This absurd result was not the intent of

---

4. Relators cite Minn.Stat. § 645.16 (1978) in support of their position. That statute states: "When the words of a law * * * are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

5. Specifically, relators contend that if the legislature had intended Minn.Stat. § 176.061(6)(c) (1978) to be susceptible to the interpretation which the Division gives to it then the legislature would have provided that:

> (c) Out of the balance remaining ($21,-474.87), the employer shall be reimbursed in an amount equal to all compensation paid under this Chapter to the employee or his dependents by the employer ($30,283.49), *providing it does not exceed the balance remaining* ($21,474.87), less the product of the costs deducted under clause (a) ($16,787.69) divided by the total proceeds received by the employee or his dependents from the other party ($49,000.00) multiplied by all compensation paid by the employer to the employee or his dependents ($30,283.49) *provided it does not exceed an amount equal to the balance remaining.*

(Emphasis added.)

6. Professor Steenson, in commenting upon the compensation court of appeals' decision, states that:

> *If the statute were adhered to strictly,* the employer would be entitled to reimbursement in the amount of workers' compensation benefits paid ($30,283.49) less its share of the legal costs:
>
> $$\frac{\$16,787.69}{\$49,000.00} \times \$30,283.49 = \$10,375.03$$
>
> The employer would thus be entitled to reimbursement in the amount of $19,908.19, an amount close to the amount of the remainder of $21,474.87. Instead of following this method, the workers' compensation division made the statutory obligation to bear a percentage of the fees and costs turn on the amount available for reimbursement, rather than on the amount of workers' compensation benefits paid.

Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation,* 6 Wm. Mitchell L.Rev. 243, 294–95 n.217 (1980) (emphasis added).

the legislature. The legislature obviously intended that the 1976 amendment reduce the insurer's subrogation recovery, not increase it!

Third, the employee argues that the compensation court of appeals' decision should be affirmed because great weight should be given to the Division's construction of Minn. Stat. § 176.061(6)(c) (1978). In support of this proposition the employee cites *Knopp v. Gutterman*, 258 Minn. 33, 102 N.W.2d 689 (1960). In *Knopp*, this court affirmed the Division's administrative interpretation of the two-year statute of limitations contained in Minn.Stat. § 176.151(1). The *Knopp* court stated:

> Departmental practice in administration of statutes will control when the practice is reasonable * * *. When meaning of statute is doubtful, great weight is to be given by courts to construction placed upon it by department charged with its administration * * *. Administrative interpretation of statutes, although not binding upon the court, should receive consideration unless found to be erroneous and in conflict with express purposes of the act and intentions of the legislature * * *.

*Id.* at 41, 102 N.W.2d at 695 (citations omitted). That decision, however, is inapposite because the meaning of the statute in the instant case is not doubtful.

Fourth, it is urged that unless the Division's formula is adopted whenever the fund available for reimbursement is less than the amount of workers' compensation benefits paid, inequities occur. Specifically, it is contended that unless the Division's formula is adopted, relators' payment for third-party litigation expenses will not be in the same proportion to its allocation of the net award.

Fifth, the employee contends that the Division's formula should be adopted because the Minnesota Workers' Compensation Act is a unique law. Although no state

has precisely the same third-party allocation mechanism, the uniqueness of Minn. Stat. § 176.061 (1978) and our cases[7] construing that law do not justify a judicial rewriting of that statute.

■ The final contention is that, if relators' formula were adopted, its retroactive application would result in the reopening of many cases calculated pursuant to the formula used by the Division since April 4, 1976. The employee's concern is misplaced. Minn.Stat. § 176.179 (1978) indicates that any "settlement, which is voluntarily paid to an injured employee * * * in apparent or seeming accordance with the provisions of this chapter by an employer or insurer, * * and received in good faith" need not be refunded. Moreover, pursuant to Minn. Stat. § 176.442 (1978), orders issued by the Division, unless appealed from within 30 days, are controlled by the doctrine of res judicata. Thus, as a result of our reversal here, injured employees who previously accepted settlements pursuant to the Division's formula need not have their files reopened and recalculated.

■ Concerning the other contentions, regardless of their sincerity or merit they fly in the face of the plain language of the statute, which requires distribution of third-party proceeds in accordance with that clear and unambiguous language. Moreover, employees receive greater benefits under the 1976 amendment than under the third-party allocation provisions existing prior to that amendment. It is not for us to rewrite a statute that has no ambiguities; that is for the legislature, and we call its attention to that fact, should this opinion not reflect its intent.

2. Relators also argue that even assuming the Division's construction of Minn.Stat. § 176.061(6)(c) (1978) is correct, they should still have a future credit of $7,357.29, the "balance remaining" paid to the employee. Relators state that:

---

**7.** *See Johnson v. Raske Bldg. Systems, Inc.*, 276 N.W.2d 79 (Minn.1979), *discussed in Steenson, supra*, note 6, at 289–302; *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 257 N.W.2d 679 (1977), *discussed in* Note, *Contribution and Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 5 Wm. Mitchell L.Rev. 109, 146–49 (1979).

After the determination that the employer was entitled to reimbursement of $14,117.58 pursuant to M.S. § 176.061, Subd. 6(c), the Workers' Compensation Division should have made payment to the employee of "any balance remaining" ($7,357.29) and designated that amount as a future credit to relators in accordance with the clear and unambiguous provisions of M.S. § 176.061, Subd. 6(d).

There appears to be no question that any "balance remaining" after the Minn. Stat. § 176.061(6)(c) (1978) computation should be distributed pursuant to Minn. Stat. § 176.061(6)(d) (1978). *See* W. Bradt, Third Party Actions, in *Workers' Compensation, Skills and Practice* 73 (Minn. Continuing Legal Education 1979). The statute is unambiguous:

> (d) Any balance remaining [after the computation in subdivision c] shall be paid to the employee or his dependents, *and* shall be a credit to the employer for any compensation which employer is obligated to pay, but has not paid, and for any compensation that such employer shall be obligated to make in the future.

*Id.* (emphasis added).

The acceptance of relators' interpretation of the statute, however, does not result in a 100% credit. This court's decision in *Cronen v. Wegdahl Cooperative Elevator Ass'n*, 278 N.W.2d 102 (Minn.1979), controls the employer's recovery of the subdivision 6(d) credit. The court's rationale in *Cronen* was that the employer should not avoid its obligation to share the costs of litigation while benefiting from that litigation. Thus, under *Cronen*, for every dollar of benefits paid in the future, the subdivision 6(d) credit should be reduced by 34.26%, the percentage derived in the subdivision 6(c) computation. Therefore, in addition to the $19,908.19 relators are entitled to under the subdivision 6(c) computation, they will receive as a credit under subdivision 6(d) the sum of $1,566.68, reduced by 34.26%, as mandated by *Cronen*. Relators are liable for 100% of all workers' compensation benefits payable thereafter.

The Workers' Compensation Court of Appeals is reversed, and the case is remanded with instructions to enter an award in accordance with this holding.