I–TELL PUBLISHING INC., a California Corporation dba United Publishers Corporation; Trend Offset Printing, Inc., a California Corporation, Plaintiffs–Appellants,

v.

HARTFORD CASUALTY INSURANCE COMPANY, a New Jersey Corporation, Defendant–Appellee.

No. 00–559976.

D.C. No. CV–99–00841–DOC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2001.

Decided Dec. 5, 2001.

Before SCHROEDER, Chief Judge, TROTT, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

United Publishers ("United") appeals the district court's dismissal of its various breach of contract claims against its insurance carrier, Hartford Casualty ("Hartford"). Pursuant to 28 U.S.C. § 1291, we have jurisdiction over United's timely appeal, and we affirm the district court's decision.

## BACKGROUND

United publishes yellow pages. After experiencing strange power anomalies, United's computers malfunctioned and one of its hard drives crashed. United's computer maintenance provider, Decision One, replaced the damaged hard drive, and consonant with industry practice, removed the damaged hard drive from United's premises. Subsequently, United sold the remainder of its computer system to a scrap metal dealer in Florida and replaced it with a new PC-based system.

At the time of the computer crash, United's computer system, including the hard drive, was covered by a Major Account Property Coverage Policy ("policy") from Hartford. That policy covered direct physical loss as well as loss of business income resulting from direct physical loss. In the event of a covered loss, the policy demanded that United, "if feasible, set the damaged property aside and in the best possible order for examination;" and "[a]s often as may be reasonably required, permit ... inspect[ion] [of] the property proving the loss or damage."

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Viewing the evidence in the light most favorable to United, we must determine whether there exist any genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence" will not suffice to defeat a properly supported motion for summary judgment, *id.* at 252, 106 S.Ct. 2505; rather, United must introduce "significant probative evidence" supporting the complaint. *Id.* at 249, 106 S.Ct. 2505 (*quoting First Nat'l Bank v. Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## CHOICE OF LAW

This diversity action is governed by the substantive insurance law of California. If there exists no decision by the California Supreme Court, we look for guidance to decisions by intermediate appellate state courts, *see State Farm Fire & Casualty Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir. 1989), or to "well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980).

## DISCUSSION

In order to avoid liability, Hartford must establish that: (1) United breached a contractual duty; and (2) Hartford suffered substantial prejudice as a result. *See Ins. Co. of Pa. v. Assoc. Int'l Ins. Co.*, 922 F.2d 516, 523 (9th Cir.1990).

## I UNITED'S BREACH OF A CONTRACTUAL DUTY

When the covered loss occurred, United breached its contractual duties to set aside the damaged property and to

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

permit inspection of the property proving loss. United asserts that a question of material fact exists as to whether it could feasibly set aside and permit inspection of the hard drive. In particular, United claims it could not retain the damaged hard drive because Decision One was required by contract and industry practice to remove it. We disagree.

The uncontroverted evidence demonstrates that United made no attempt to retain the hard drive or to inform Hartford that the damaged hard drive had been removed from the premises. Moreover, no evidence suggests that Decision One would not have allowed United to keep the hard drive, if it had asked. As such, we do not accept United's present attempt to shift responsibility for the hard drive's disappearance onto Decision One. No matter how vociferous, United's contention that "Decision One took it" does not raise genuine issues of material fact as to whether United breached its contractual duties to set aside and permit inspection of the damaged hard drive.

In addition, United breached its duty to permit inspection of the property proving loss when it sold the remainder of its computer system for scrap. United offers no reason why it could not have allowed Hartford to inspect the computer system before the sale. While United claims the remainder of the computer system incurred no damage, its duty to permit inspection covers all property proving the loss, not merely the damaged property. Here, uncontested testimony revealed that the computer system and its component parts would have borne signs of a power surge, if such an event occurred. Because the computer system was integral to confirming United's proffered cause of its loss, United's sale of the computer system breached its duty to permit Hartford to inspect the property proving loss.

## II SUBSTANTIAL PREJUDICE

■ Even if United breached a contractual duty, to avoid liability, Hartford must also demonstrate that, as a result of United's breach, it suffered substantial prejudice. In California, a breach of a contractual obligation does not give rise to a presumption of prejudice. *See Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 307, 32 Cal.Rptr. 827, 384 P.2d 155 (1963). Instead, the burden remains on Hartford to prove that it suffered substantial prejudice as a result of United's breach. *See Colonial Gas Energy Sys. v. Uniguard Mut. Ins. Co.,* 441 F.Supp. 765, 768–69 (N.D.Cal. 1977) (applying California law). Substantial prejudice may be determined as a matter of law, *see Northwestern Title Sec. Co. v. Flack,* 6 Cal.App.3d 134, 141, 85 Cal.Rptr. 693 (1970), but such a finding requires proof that there was a "substantial likelihood the trier of fact" would have reached a decision favorable to Hartford. *Billington v. Interinsurance Exch.,* 71 Cal.2d 728, 737, 79 Cal.Rptr. 326, 456 P.2d 982 (1969).

Relying on *Colonial Gas,* Hartford argues that when United abandoned the defective hard drive and sold the remainder of the computer system, United substantially prejudiced Hartford as a matter of law. We agree. In *Colonial Gas,* an insured suffered a loss to an underground liquid natural gas tank. 441 F.Supp. at 767. The insured emptied the tank, inspected the loss, repaired the damage, and resealed the tank. *Id.* at 767–68. Only then did the insured notify its insurance carrier of the possibility of a claim. *Id.* at 768. The district court ruled that by resealing the tank, the insured precluded the insurer from making its own investigation into matters which were material to the dispute, and therefore, the insurer was substantially prejudiced as a matter of law.

*See id.* at 770. In doing so, the court in *Colonial Gas* emphasized the materiality of the information withheld. *Id.* at 770 n. 2 ("[T]he interior of the tank ... would be the source of any evidence *material* to the claim and any defense.") (emphasis added); *id.* at 770 n. 4 ("The asserted facts ... corroborate the conclusion that an inspection of the interior of the tank is *material* to the presentation of any defense....") (emphasis added); *id.* at 771 ("To hold otherwise would give the insured carte blanche to withhold notice of a claim until facts or witnesses *material* to the defense against its claim have been made unavailable....") (emphasis added).

As did the insured in *Colonial Gas,* United prevented Hartford from examining the only property demonstrating loss. United abandoned the hard drive to Decision One and subsequently sold the remainder of the computer system. Only by examining this property could Hartford have supported a coverage defense. The hard drive and the computer system were not only material, but indispensable to Hartford's investigation of United's loss.

United argues that access to the damaged hard drive was immaterial to the determination of Hartford's coverage defenses, and thus, Hartford was not substantially prejudiced by not examining it. As its sole support for that position, United relies on its expert witness, Dr. Thomas DiStefano, who asserts that "[a]n examination of the failed [hard drive] would not enable one to determine definitively which of these causal factors ... triggered the disk crash mechanism."

Dr. DiStefano, however, merely suggests that examination of the hard drive would not have permitted one to determine "definitively" the cause of the hard drive crash. He does not suggest that the hard drive was not material to the investigation. In fact, taking Dr. DiStefano's testimony at face value, as we must, even if examining the hard drive would not have led to a definitive determination of the cause of the hard drive crash, examination may have permitted Hartford to rule out one or another possible causes. Indeed, in examining the hard drive, Hartford may have been able to rule out a power surge as the cause of the hard drive crash, or on the other hand, it may have been able to rule out its policy exclusions. Either way, examination of the hard drive was material to Hartford's investigation of United's claim. Moreover, examination of the damaged hard drive would have revealed what information or proprietary software United lost during the crash. Accordingly, United substantially prejudiced Hartford as a matter of law when it prevented Hartford from examining the damaged hard drive.

The sale of the computer system also substantially prejudiced Hartford by limiting its ability to mount a coverage defense. The evidence in the record indicates that an examination of the computer system, the power supply, and the display terminals would have revealed signs of a power surge, if such an event occurred. If the examination indicated that no power surge occurred, Hartford could have challenged United's proffered cause of loss. Thus, it is beyond doubt that the computer system was material to Hartford's investigation, and United's sale of that material evidence prejudiced Hartford as a matter of law.

## III HARTFORD'S LATE NOTICE DEFENSE

United claims that Hartford's policy defenses are merely disguised versions of Hartford's previously rejected late-notice defense. The late-notice defense depends only on the lapse in time between an insured's loss and its notification to the insurer of a possible claim. The defenses

Hartford now asserts depend on United's failure to perform certain affirmative duties imposed by the policy. The temporal relationship between United's loss and its alleged failure to perform these duties is not relevant to Hartford's present coverage defenses, and as such, wholly different from Hartford's previously defeated late-notice defense.

## CONCLUSION

No genuine issues of material fact remain. United breached its duties under the policy, and Hartford suffered substantial prejudice as a result.

AFFIRMED.